Singh, J.
Due to a dispute with their condominium association, Drummer Boy Homes Association, Inc. (the “Association”), regarding parking rules and associated fines, Carolyn and Randy Britton (the “Britons”) began withholding payment of their monthly common area fees.[2] The Association brought suit to recover the fees and establish a six-month lien priority, pursuant to G.L.c. 183A, §6 and G.L.c. 254, §5.[3] As the Brittons continued to withhold payments throughout the litigation, the Association filed successive suits, seeking to extend the period of lien priority by six months with each suit. Three suits were consolidated. Upon the Association’s motion for summary judgment, the trial court entered judgment against the Britons in the amount of $22,742.08, but allowed the Association only a single six-month lien priority. The trial court denied the Association’s subsequent motion to alter or amend the judgment to reflect three successive six-month periods of lien priority. The Brittons have appealed the judgment against them, and the Association has filed a cross appeal of the judge’s establishment of lien priority. We affirm the judgment in all respects.
*187 This action was preceded by two prior actions, one in 2005 and one in 2006, brought by the Association against the Brittons to collect unpaid monthly condominium fees. Each of those actions was voluntarily dismissed by the Association upon the Brittons’ payment of the fees. The Association applied the Brittons’ payments, however, not only to the unpaid monthly condominium common fees, but also to late fees, parking fees, and attorney’s fees. The Brittons objected to tire allocation of their payments in that manner. The ongoing dispute led the Association to file another action against the Brittons on August 6,2007 to collect unpaid condominium fees and enforce a lien with a priority for the fees due and owing in the immediately preceding six-month period, pursuant to G.L.C. 183A §6 (the “first action”). This time, the Brittons did not pay. In fact, they removed the action to the United States District Court for the District of Massachusetts. While that action was pending in Federal court, the Association filed another action in state district court on January 31,2008, seeking unpaid condominium fees and lien priority for the fees due and owing in the immediately preceding six-month period, since the last action was filed (the “second action”). On October 2, 2008, while the prior two actions were still pending, the Association filed a third action in state district court seeking unpaid condominium fees and lien priority for the fees due and owing in the immediately preceding six-month period since the last action was filed (the “third action”).
On December 17,2008, the Federal District Court remanded the first action to the state district court and ordered the Brittons to pay attorney’s fees to the Association. The state district court consolidated all three actions. After entertaining various motions brought by the Brittons, including repeated motions to reconsider, the trial court disposed of all of the Brittons’ affirmative defenses, counterclaims, and claims against third parties, leaving only the Association’s original claim. Ultimately, on June 11, 2009, the court allowed the Association’s motion for summary judgment, and awarded the Association $9,887.22 in unpaid common expenses, $12,314.00 in reasonable attorney’s fees, and $540.86 in costs of collection, for a total of $22,742.08. The Brittons timely appealed. The Association filed a timely motion to alter or amend the judgment, seeking three successive periods of lien priority, rather than the single six-month period awarded in the judgment. That motion was denied on September 1, 2009, and the Association timely appealed.
The thrust of the Brittons’ argument on appeal is that the plaintiff “Board of Directors of the Drummer Boy Homes Association, Inc.” is not a legal entity entitled to sue and, therefore, that the judgment is void.[4] The Association concedes that *188 there is no such legal entity and that the true party in interest is the Association. The Brittons agree that the Association has the “power, authority, and standing” to sue condominium unit owners for condominium fees. The Association acts through its board of directors, but the legal entity entitled to sue is the Association. See G.L.c. 183A, §10 (b) (4) (organization of condominium unit owners entitled to conduct litigation involving common area fees). Therefore, the Association should have brought suit in the name of “Drummer Boy Homes Association, Inc.” rather than “Board of Directors of the Drummer Boy Homes Association, Inc.”
As the trial judge noted, it was a simple misnomer that could have been corrected by motion or by the court sua sponte at any point in the litigation.[5] See Jones v. Boykan, 79 Mass. App. Ct. 464, 466 n.7 (2011) (trial court sua sponte substituted city for police department named in complaint where city was intended target and properly served), citing Hennessey v. Stop & Shop Supermarket Co., 65 Mass. App. Ct. 88, 91-92 (2005). Where the misnomer involves a plaintiff with undisputed standing to sue, which acknowledges its own mistake in naming itself, we have no concern with correcting that mistake on appeal, and we have done so in this case.[6] We reject, therefore, the Brittons’ argument that the misnomer of the plaintiff resulted in a void judgment.
As to the Association’s claim that G.L.c. 183A, §6 entitles it to three successive six-month periods of lien priority, we turn to the statute. Trace Constr., Inc. v. Dana Barros Sports Complex, LLC, 459 Mass. 346, 357 (2011) (courts to give effect to plain meaning of text where chosen language does not produce illogical result). “‘In determining the scope of the statute, we look not only at the Legislature’s words, but also at “the cause of [the statute’s] enactment, the mischief or imperfection to be remedied and the main object to be accomplished.’” Mannings. Nobile, 411 Mass. 382, 387 (1991), quoting Telesetsky v. Wight, 395 Mass. 868, 872 (1985).” Blood v. Edgar’s, Inc., 36 Mass. App. Ct. 402, 405 (1994).
*189 Section 6(a) (i) of G.L.C. 183A provides that an organization of unit owners (“condominium association”) “shall have a lien on a unit for any common expense assessment levied against that unit from the time the assessment becomes due.”[7] Unit owners are “personally liable” for all sums assessed for their share of common expenses, “including late charges, fines, penalties and interest” assessed and all costs of collection “including attorneys’ fees, costs and charges.” G.L.c. 183A, §6(b). When a portion of a unit owner’s share of the common expenses has been delinquent for at least sixty days, the condominium association must notify the unit owner, as well as any first mortgagee, of the delinquency. G.Lc. 183A, §6(c), first par. Thirty days prior to instituting any action to enforce its lien for delinquent common expenses, the condominium association must notify any first mortgagee of its intention to file suit. Provided that these procedural steps are completed properly, the “lien ... shall be enforced in the manner provided” in G.L.c. 254, §§5 and 5A. G.L.c. 183A, §6(c), second par.[8]
Section 6(c), second par. further provides:
Such lien is prior to all other liens and encumbrances on a unit except (i) liens and encumbrances recorded before the recordation of the master deed, (ii) a first mortgage on the unit recorded before the date on which the assessment sought to be enforced became delinquent, and (iii) liens for real estate taxes and other municipal assessments or charges against the unit. This lien is also prior to the mortgages described in clause (ii) above to the extent of the common expense assessments ... which would have become due in the absence of acceleration during the six months immediately preceding institution of an action to enforce the lien... provided... that payment of the assessments with respect to such six month period, and to the extent of any costs or reasonable attorneys’ fees incurred in said action, shall serve to discharge such lien to the extent that such lien is prior to such mortgages described in clause (ii) above.
Thus, a prior first mortgage is subordinate to the lien of the condominium association to the extent of six months of common expense assessments immediately preceding the litigation. Although the condominium association maintains a lien for the entire delinquency, a six-month portion of that delinquency obtains a priority status, over and above the first mortgagee. A first mortgagee can recover the priority status of its mortgage, however, by paying the priority portion of the condominium *190 association’s lien, in addition to any reasonable attorney’s fees and costs incurred in the condominium association’s action to enforce the lien.[9]
The statute is silent as to whether a condominium association may extend its six-month lien priority by filing successive suits to enforce its lien. The Association argues that, because the plain language of the statute does not forbid successive actions to extend the six-month lien priority, it must be permitted.[10] Under the Association’s theory, however, a condominium association could file successive suits and thereby enlarge the priority portion of its lien such that its entire lien, no matter how large and no matter how much time was encompassed, would be prior to the first mortgage. If the Legislature had intended to make the condominium lien prior to the first mortgage, it could have done so explicitly. Instead, the Legislature made the condominium lien prior to all other liens, with a few specific exceptions, including a first mortgage recorded before the unit owner became delinquent. See G.L.c. 183A, §6(c), second par. Recognizing that a condominium association’s lien could be extinguished entirely by a foreclosing first mortgagee, the legislature gave condominium associations a limited six-month period of priority. This was meant to be an “equitable balance between the need to enforce collection of unpaid assessments and the obvious necessity for protecting the priority of the security interests of mortgage lenders.” Uniform Condominium Act (1980) §3-116, Comment 2 (discussing purpose of limited six-month lien priority in §3-116(b), which has nearly identical language regarding six-month lien priority as G.L.c. 183A, §6 (c), second par.). The Association’s interpretation that it may file successive suits to extend its lien priority over a prior first mortgage beyond a six-month period of time would therefore undermine the purpose of the statutory scheme. We cannot accept such an interpretation.[11]
*191 Pursuant to G.L.C. 183A, §6 and the Association’s request in its appellate brief, see Fabre v. Walton, 441 Mass. 9, 10 (2004), the Association shall be awarded costs and attorneys’ fees in connection with this appeal, see Yorke Management v. Castro, 406 Mass. 17, 19 (1989) (statutory provision for reasonable attorneys’ fees would ring hollow if it did not include right to appellate attorneys’ fees), upon its submission to this Division of the appropriate motion and affidavit within 20 days of this decision. The Brittons shall be entitled to file a written opposition within 15 days of the Association’s filing.
Judgment affirmed.
So ordered.

 At the beginning of the litigation, Carolyn P. Britton (“Carolyn”) was the sole owner of the condominium. The Association named her husband, Randy Britton (“Randy”), as a defendant/party in interest because he held a junior mortgage on the property. After the Association complained that Randy, who has a juris doctor degree but is not admitted to the bar, was engaged in the unauthorized practice of law by assisting his wife during the litigation, Carolyn added Randy to the deed on April 14, 2008. The interest of the Brittons thereby became aligned, and they were allowed to proceed pro se, together.

 Suit was brought against the Britons to recover the fees and enforce a lien. Coldwell Banker Mortgage and Massachusetts Educational Financing Authority were brought into the litigation as parties in interest because they had liens on the property. Apart from appearing and answering, neither Coldwell Banker Mortgage, nor the Massachusetts Educational Financing Authority, participated in the litigation. They also did not appeal the judgment.

 The Brittons’ entire argument on appeal is the following: “The Plaintiff is not a legal entity registered with the Massachusetts Secretary of State. A114A1121. Every Judgment presupposes that there is at least one legal entity on each side of the case. Corpus Juris Secundum §11. Any judgment not having that is void.”
In reply to the Association’s responsive brief, the Brittons filed a brief with additional arguments. The Association moved to strike the reply brief. The Brittons thereafter moved to strike the Association’s brief. A further round of motions ensued. This Division denies all motions except for the Association’s motion for leave to file a supplemental appendix, to which the Brittons did not object. After review of the extensive briefing of the parties, we discern only a single issue properly raised by each party: for the Brittons, the issue is whether the judgment is void due to misnomer of the plaintiff; for the Association, the issue is whether it was entitled to lien priority for three successive six-month periods.

 It appears that the Brittons raised the issue early on in the litigation and repeated it at every turn, yet the Association took no action to correct the error, even after the judge suggested at the summary judgment hearing that a “quick amendment could fix” the mistake. In his decision on the summary judgment motion, the trial judge rejected the Brittons’ argument that the plaintiff was not a legal entity entitled to maintain the action, relying on the arguments made by the Association in support of the summary judgment motion. Unlike its position on appeal, however, the Association never acknowledged its error in the trial court.

 The defendants rely on Fried v. Wellesley Mazda, 2010 Mass. App. Div. 36 for the proposition that a judgment involving a party that is not a legal entity, entitled to sue or be sued, is void. In that case, the plaintiff sued two parties, namely, Hometown Auto Framingham, Inc. and Wellesley Mazda. Hometown Auto Framingham, Inc. was an incorporated entity entitled to sue and be sued, but it was doing business as Wellesley Mazda. Thus, Wellesley Mazda was not a separate party; it was simply the trade name of the incorporated entity. The two entities were, in fact, one party — the incorporated legal entity. The judgment against the nonexistent party was, therefore, voided. Id. at 37. In contrast, here, the litigation was brought by an existing legal entity with authority to sue, but it was simply named incorrectly. The Brittons suffer no prejudice from the amendment.

 Section 6(a) (i) of G.L.c. 183A was amended by St 2010, c. 183, §3, to take effect on October 24,2010; however, the language quoted above remained unchanged and otherwise unaffected by the amendment.

 Section 5 of G.L.c. 254 provides that a lien established under G.L.c. 183A, §6 “shall be enforced by a civil action brought in the ... district court in the judicial district where such land lies.” An attested copy of the complaint “shall be filed in the registry of deeds and recorded ... within thirty days of the commencement of the action.” Id. Section 5A of G.L.C. 254 further provides that “[wjhen the amount of a lien under [G.Lc. 183A, §6]... has been established by a court, the court shall enter an order authorizing the sale of the real estate to satisfy such lien.” There is no question on this appeal as to whether these procedural steps were properly followed.

 Because the first mortgagee is entitled to at least 30 days notice of the condominium association’s intent to file suit to enforce its lien, it has an opportunity to forestall suit by entering into an agreement with the condominium association to pay off the lien and take over the unit owner’s payments. G.L.c. 183A, §6(c), fourth par. In this way, the first mortgagee can recover the priority status of its mortgage without having to pay the condominium association’s legal fees and costs associated with the suit.

 The Association also points to trial court opinions supporting its interpretation of the statute. We observe that, in each of those opinions, the sole reason given for allowing the extension of lien priority beyond six months is that the statute does not forbid successive actions to extend lien priority. There appeared to be no further analysis.

 The Association also supports its argument by pointing out that the third and fourth paragraphs of G.L.c. 183A, §6(c), added in 1998, refer to condominium priority liens in the plural, thereby indicating that a condominium association could have more than one six-month priority at one time. A condominium’s lien for common assessments, however, is a single lien. See G.L.c. 183A, §6 (a) (i) (“The organization of unit owners shall have a lien on a unit for any common expense assessment levied against that unit from the time the assessment becomes due.”). Any language regarding multiple priority liens could not, therefore, refer to liens for common assessments. Likewise, the Association’s position that it may increase its period of priority by maintaining multiple suits overlooks the fact that each suit seeks to enforce a single lien. This improper claim splitting cannot be approved.